UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:24-cv-05984-AB-PVC | Date: | July 24, 2024 |
|---|---|---|---|

| Title: | *Tecnogruas v. International Transportation Service, LLC et al* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>DENYING</u> EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE [Dkt. No. 4]

The Court has reviewed Plaintiff Tecnogruas' Ex Parte Application for Temporary Restraining Order ("TRO") and Order to Show Cause Why Preliminary Injunction Should Not Issue against International Transportation Service, LLC et al. ("ITS"). ("Application," Dkt. No. 4.) Defendant filed an opposition. Dkt. No. 13. ("Opposition"). Plaintiff seeks a TRO enjoining ITS from operating, selling (or advertising for sale) or relocating certain equipment, namely a set of cranes. App. at 1. For the following reasons, the Ex Parte Application is **DENIED**.

I.   BACKGROUND

On July 17, 2024, Plaintiff filed a Complaint against ITS alleging breach of contract, breach of implied covenant, conversion, intentional misrepresentation, intentional interference with prospective economic relations, negligent interference

with prospective economic relations, and a violation of California Penal Code 496. Dkt. No. 1 ("Complaint").

Plaintiff, a crane rental and operation business, and ITS, a container terminal operating at the Port of Long Beach, entered into an agreement to purchase a set of cranes (identified through numbers 2502, 2767, and 2768, "the Cranes") on March 7, 2024. App. at 7; Exhibit 1 ("Crane Sale and Purchase Agreement", or the "Agreement"). Plaintiff contends that, in reliance on this Agreement, it executed a separate contract with a third-party in Ecuador for that party to lease the Cranes from Plaintiff after Plaintiff purchased the equipment from ITS. *Id*. at 2.

Due to the massive size of this type of heavy machinery, the removal of the Cranes requires laborious and resource-intensive work. Opposition at 8. As such, the Agreement required the Plaintiff to coordinate with a heavy lift contractor for the removal of the Cranes by April 15, 2024. According to the Plaintiff, ITS informed the Plaintiff that a certain third-party was the only company capable of handling the removal. Guzman Decl. at ¶ 10. Plaintiff contacted that third-party and arranged for the removal of the Cranes from ITS, but later during the discussions, the relationship between ITS and the third-party deteriorated and the Cranes were not removed. App. at 3. On June 6, 2024, ITS sent a Notice of Default to the Plaintiff for failure to remove the Cranes and for failure to pay a certain bond. Guzman Decl. at ¶ 17-18; Exhibit 14. While the bond issue was resolved, the Cranes remained on ITS's property. On June 17, 2024, ITS sent a Notice of Termination, with the parties eventually agreeing that in exchange for waiving any challenge to the termination and signing a general release, ITS would return the full contract price of $500, 000. App. at 5. Plaintiff contends that it believed the parties would reopen discussions to re-purchase the Cranes once it signed the release. App. at 6. That did not happen, and the Plaintiff contends it signed the release under duress as it had "no choice" but to sign. *Id*.

As of the date of the Application's filing, the Cranes were still in ITS's possession, and Plaintiff believes a purchaser was onsite to buy the Cranes on that day (July 17). Plaintiff further alleges that ITS continues to use the Cranes since the parties entered into their initial purchase Agreement, and that ITS did not cease in listing the equipment for sale on its website.

## II.     DISCUSSION

A temporary restraining order ("TRO") is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*., 415 U.S. 423, 439 (1974). The purpose of a preliminary injunction, in turn, is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V*., 590 F.3d 1091, 1094 (9th Cir. 2010). The standard for a TRO is similar to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc*., 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). To obtain a TRO or a preliminary injunction, Plaintiff must show, among other things, either that it is likely to succeed on the merits of its claims, or that there are serious questions going to the merits and the balance of hardships tips sharply in Plaintiff's favor. *See Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) and *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (discussing test). A Plaintiff must also show that it is likely to suffer irreparable harm and that the injunction weighs in the interest of the public. *Stromans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

     Here, the Court will focus first on the irreparable harm, or in this case, the lack thereof, as the fatal flaw in the Plaintiff's requested relief. Plaintiff contends that it will suffer irreparable harm because the Cranes are unique in its weight, height and capability and are "exceedingly difficult if not impossible to locate for sale." App. at 10. These Cranes, according to the Plaintiff, have a particular "out and back reach" that makes them suitable for the Ecuadoran lessee's needs. Plaintiff also argues that it may not be able to recover adequate money damages due to a limited liability provision in the Agreement that caps the Plaintiff's damages at the cost of the contract price, $500, 000. App at 11. Additionally, Plaintiff argues it will suffer irreparable harm to its business, goodwill, and reputation if it is unable fulfill its obligation to the Ecuadoran lessee. *Id*. First, as the Defendant aptly notes, Plaintiff has failed to submit any evidence establishing the uniqueness of the Cranes or how rare this specific equipment is on the market. Furthermore, Defendant, for its part as the seller of the Cranes, argues that the equipment is not custom built and that there are other crane brands and models that offer the same capabilities. Even if the Defendant had not offered this context, the burden would still be on the Plaintiff to establish the uniqueness of these Cranes to warrant the extraordinary relief requested.

     Second, while Plaintiff states that a court should grant an injunction when pecuniary compensation would not afford adequate relief or where it would be extremely difficult to ascertain the amount of compensation, Plaintiff does not

sufficiently articulate how its circumstances fit that bill. Indeed, Plaintiff offers no caselaw to support its argument that a contract provision that limits damages constitutes irreparable harm. At least one federal court in California recently noted that the law on this issue is "murky," and declined to find that the non-binding authority submitted by the parties in that case clearly favored the movant's position, which is like the position the Plaintiff takes here. *Sahel Oncology, LLC v. STA Pharmaceutical Hong Kong Limited*, 2023 WL 5985504 *6 (S.D.Cal. 2023).

Finally, Plaintiff's argument that its goodwill and reputation will be significantly harmed if ITS is not enjoined from using and/or selling the Cranes is also unavailing. Plaintiff cites *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) for the proposition that "damage to the goodwill of a business may be difficult to calculate, and thus, evidence of such damage could support a finding of irreparable injury." App. at 12. But the cited page of *Herb Reed* does not state that sentiment explicitly or implicitly. Not only does *Herb Reed* not support what Plaintiff purports it to, *Herb Reed* actually reversed a district court's finding of irreparable harm, holding it to be cursory, conclusory, and not rooted in evidence. *Herb Reed Enterprises, LLC*, 736 F.3d at 1250. This Court is cautious to make that same error. While it is plausible that the Plaintiff may suffer reputational damage and loss of business, it offers no evidence to that effect. It has not even been established that the third party at the Ecuadoran port has backed out or threatened to back out of its contract with the Plaintiff. Furthermore, as the Defendant aptly notes, the fact that the contract with the Ecuadoran third-party is quantifiable undercuts Plaintiff's argument that the damage is not easily calculated. The "TRO application and supporting evidence can be described as thin and barebones at best." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131–32 (9th Cir. 2006).

Because Plaintiff has not made a sufficient showing of irreparable harm, the Court will not address the merits of the request at length beyond the following: Plaintiff is not entirely attempting to preserve the status quo. Rather, Plaintiff is seeking a TRO that would alter the status quo, at least in part, by requiring ITS to take down its ongoing advertisement of the Cranes that Defendant contends has continuously been live since it and the Plaintiff executed their deal and by requiring ITS to stop using the Cranes that were also used before and during deal negotiations with the Plaintiff. Plaintiff's request to enjoin the Defendant from moving the Cranes is, on balance, a hardship on the Defendant who operates a busy port and may need to reposition the Cranes for logistical reasons. Finally, no concrete evidence has been submitted regarding the allegation that a purchaser was onsite to buy the Cranes or that the Defendant has sold the Cranes to an alternate

buyer.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Ex Parte Application is **DENIED**.

**IT IS SO ORDERED**.